UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TIMOTHY T. BANKSTON                                                                              PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:15cv38-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, et al.                                                    DEFENDANTS

ORDER

This employment-discrimination case is before the Court on Defendants Hinds County, Mississippi, and the Hinds County Board of Supervisors' Motion for Summary Judgment [28]. For the reasons that follow, the motion is denied as to Plaintiff's Americans with Disabilities Act retaliation claim against Hinds County, Mississippi, but is otherwise granted.

I.      Facts and Procedural History

Plaintiff Timothy T. Bankston began his employment with Hinds County, Mississippi, as a maintenance senior technician in 2011. In August 2014, Bankston sustained injuries in a non-work-related accident and was off work for three days. He claims that, upon his return, Hinds County "began to systematically discriminate against [him] . . . ." Am. Compl. [10] ¶ 15. As a result, on September 3, 2014, Bankston filed a charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination under the ADA. Twenty days later, on September 23, 2014, Hinds County terminated Bankston's employment. Following his termination, Bankston filed an amended EEOC charge on September 29, 2014, alleging retaliatory termination.

Bankston filed this lawsuit against Hinds County and the Hinds County Board of Supervisors on January 20, 2015. In his Amended Complaint, Bankston asserts claims for discrimination under the ADA and retaliation under the ADA and Title VII. At the close of

discovery, on January 27, 2016, Defendants filed the instant summary-judgment motion [28]. The matters raised have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

In his response to Defendants' motion for summary judgment, Bankston conceded his claims against the Hinds County Board of Supervisors as well as the ADA discrimination claim against Hinds County.  The only claim before the Court, therefore, is Bankston's retaliation claim.[1]

"To establish a prima facie case of retaliation under the ADA . . . , a plaintiff must show that (1) []he participated in an activity protected under the statute; (2) h[is] employer took an adverse employment action against h[im]; and (3) a causal connection exists between the protected activity and the adverse action."  *Feist*, 730 F.3d at 454.  If the employee establishes a prima facie case, the burden shifts to the employer "to state a legitimate, non-retaliatory reason for its decision."  *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007)) (internal quotation marks omitted).  Once the employer articulates such a reason, "'the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation,' which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive."  *Id.* (quoting *LeMaire*, 480 F.3d at 388–89) (additional citation omitted).

---

[1] Bankston purports to assert this claim under both Title VII and the ADA.  But it is not apparent that Plaintiff engaged in protected activity *under Title VII* when he filed a claim alleging *discrimination on the basis of disability* with the EEOC.  *Cf. Cyr v. Perry*, 301 F. Supp. 2d 527, 535 (E.D. Va. 2004) ("Title VII does not expressly authorize retaliation claims in response to protected activity opposing age discrimination because it only makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter.'" (quoting 42 U.S.C. § 2000e–3(a))).  Regardless, the analysis of retaliation claims under the two statutes is identical, *see Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013), so the Court will proceed under only the applicable statute—the ADA.

As to Bankston's prima facie case, Hinds County concedes that "filing a charge of discrimination with the EEOC constitutes a protected activity . . . ." Defs.' Mem. [29] at 18. It also appears to concede, as it must, that termination is an adverse employment activity. *Id.* at 20; *see Grubic v. City of Waco*, 262 F. App'x 665, 667 (5th Cir. 2008). But Hinds County seems to argue that Bankston cannot establish the requisite causal connection between the protected activity and the termination. At the prima facie stage, the causation element may be satisfied by showing close temporal proximity between the protected conduct and the adverse employment action. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Here, twenty days elapsed between the time Bankston filed his initial EEOC charge and the date his employment was terminated. The Court concludes that this close temporal proximity satisfies Plaintiff's burden to establish causation at the prima facie stage. *See, e.g.*, *Porter v. Houma Terrebonne Hous. Auth. Bd. Of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015) (finding six-week gap between protected activity and adverse action sufficient to state prima facie case).

The burden therefore switches to Hinds County to articulate a legitimate, non-retaliatory reason for terminating Bankston's employment. Defendant has met that burden: it asserts that Bankston violated its policy 6.20.7, "Workplace Conduct Violence-Free Workplaces," which precludes "conduct, verbal or physical, which intimidates, endangers, or creates the perception of intent to harm persons or property." Sept. 24, 2014 Letter [28-13]. In particular, Hinds County points to an August 7, 2014, incident in which "Plaintiff barged into a[] . . . meeting of maintenance department supervisors" and "engaged in a verbal exchange with [his supervisor, Tommy] Rayford . . . ." Defs.' Mem. [29] at 19. Hinds County contends that Bankston "aggressively" interrupted the meeting, Defs.' Resp. to Interrog. No. 9 [28-19] at 2, and that the

4

exchange was "heated" and "loud."  Defs.' Mem. [29] at 4.  Hinds County also points to an incident in which Bankston "behaved in an aggressive manner to the Hinds County Personnel Director and thereafter threatened the County Administrator."  *Id.* at 20 (citing Davis Aff. [28-18]); *see* Davis Aff. ¶¶ 4–5 (recounting that Bankston "behaved in an aggressive manner" to the personnel director and was "irrational, hostile and would not allow [Davis] to speak" when she reached out to him to "discuss [his] concerns").[2]

Because Hinds County satisfied its burden of production, the burden returns to Bankston to show that Defendant's reasons are pretext for retaliation.  "To carry this burden, the plaintiff must rebut each . . . nonretaliatory reason articulated by the employer."  *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).  The non-movant may also cite the temporal proximity, provided it is not the only evidence of pretext.  *See Porter*, 810 F.3d at 950 (holding that "while temporal proximity alone is insufficient to prove but for causation in arguing pretext, the less than seven-week space between [the protected activity] and [the adverse action] is evidence suggesting pretext" (citation and internal quotation marks omitted)).

Plaintiff endeavors to meet his burden by offering evidence that the proffered reason for terminating his employment—violation of the workplace-violence policy—is unworthy of credence.  Starting with the August 7 incident, Bankston's deposition testimony contradicts the assertion that he barged into and aggressively interrupted a supervisors' meeting.  According to

---

[2] In its reply, Hinds County seems to assert an additional non-retaliatory reason for terminating Bankston's employment:  that he walked off the job and refused to report for duty on August 25, 2014.  Defs.' Reply [34] at 4.  While this incident was mentioned in Hinds County's opening brief, it was not listed among the non-retaliatory reasons for Bankston's discharge in Defendant's response to Plaintiff's interrogatories.  *See* Defs.' Resp. to Interrog. No. 9 [28-19] at 2.  It was likewise omitted when Defendant listed its non-retaliatory reasons in its opening memorandum.

him, the office in which the supervisors were meeting "was a walk-through office" employees had to pass through to get to the secretary, and it was a "normal thing" for employees to do so. Bankston Dep. [28-3] at 66. Bankston explains that as he was passing through the office that day, Mr. Rayford said something to him, and he told Mr. Rayford that he was on his way to the secretary "to find out the process of filing a grievance." *Id.* at 66–67.

Bankston also takes issue with Defendant's description of the tenor of the discussion, pointing to deposition testimony in which he "denied that the [August 7] exchange was heated or that he was loud." Pl.'s Mem. [33] at 2 (citing Bankston Dep. [28-3] at 67). When asked whether he raised his voice, Bankston replied, "[n]ot that I know of," explaining that the exchange "was talking just like you and I are talking." *Id.* at 67. But defense counsel pressed the point, asking whether he had "any sort of argument with Mr. Rayford . . . when [he] walked through that area," and Bankston responded, "[y]eah, we had a conversation. We, you know—we—we—Mr. Rayford said some things. I said some things, you know. If I was loud, he was loud, too, you know." *Id.* at 69–70.

This testimony suggests that Bankston became loud, but he was terminated for being threatening. Sept. 24, 2014 Letter [28-13]. And significantly, he notes that neither the initial letter he received regarding the incident nor the written reprimand accused him of being aggressive or threatening on August 7. Pl.'s Mem. [33] at 2 (citing Aug. 21, 2014 Letter [28-6]). Instead, management faulted Bankston for "fail[ing] to comply with verbal instructions." Aug. 21, 2014 Letter [28-6]. It did not accuse him of barging into the meeting, acting aggressively, threatening others, or even being loud. *See id.* Finally, as to the accusation that he acted

6

threateningly toward Hinds County personnel, Bankston testified "I did nothing violent. . . . I wasn't threatening to anybody." Bankston Dep. [28-3] at 111.

Hinds County responds that Bankston "merely asserts the conclusory allegation that the County's reason for terminating him is a pretext without offering any competent summary judgment evidence which supports the same." Defs.' Reply [34] at 5. But Bankston did offer competent summary-judgment evidence supporting his assertion that Hinds County's proferred reason is false: his sworn deposition testimony. *See C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (holding that a party's "affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving."). And his testimony—when viewed in a light most favorable him—creates a fact issue as to whether Bankston actually violated the only policy Hinds County cited in its termination letter—the violence-free-workplace policy, 6.20.7.

Accordingly, Bankston has created a question of fact whether the proferred reason was "unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). That issue, coupled with the strength of the prima facie case, creates a question for a jury on Bankston's retaliation claim. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148–49 (2000). Hinds County's motion is therefore denied as to the ADA retaliation claim.[3]

---

[3]This is admittedly a close call, but the Court notes that "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1086)).

IV.	Conclusion

The Court has considered all of the parties' arguments. Those not directly addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion for Summary Judgment [28] is granted as to the claims against the Hinds County Board of Supervisors, as well as the ADA discrimination and Title VII retaliation claims against Hinds County. The motion is denied as to the ADA retaliation claim against Hinds County.

**SO ORDERED AND ADJUDGED** this the 29th day of April, 2016.

> s/ *Daniel P. Jordan III*
> UNITED STATES DISTRICT JUDGE